UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sabri Properties, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>City of Minneapolis,<br><br>　　　　　Defendant. | Case No. 18-cv-3098 (MJD/HB)<br><br>**REPORT AND RECOMMENDATION** |

Robert M. Speeter, Speeter & Johnson, 120 South Sixth Street, Suite 1515, Minneapolis, MN 55402, for Sabri Properties, LLC

Sarah C. S. McLaren, Office of the Minneapolis City Attorney, 350 South Fifth Street, City Hall-Room 210, Minneapolis, MN 55415, for the City of Minneapolis

HILDY BOWBEER, United States Magistrate Judge

　　　This matter is before the Court on the Motion to Dismiss filed by the City of Minneapolis [Doc. No. 16]. The Honorable Michael J. Davis referred this motion to the undersigned for the issuance of a report and recommendation. (Order of Referral, Dec. 19, 2018 [Doc. No. 21].) For the reasons set forth below, the Court recommends that the Motion to Dismiss be granted.

**I.　　Background**

　　　Plaintiff Sabri Properties, LLC ("Sabri") is a limited liability company organized under the laws of Minnesota. (Compl. ¶ 3 [Doc. No. 1].) Sabri is suing Defendant City of Minneapolis ("the City") for violating its right to due process under the Fourteenth

1

Amendment to the U.S Constitution, violating its right to due process under the Minnesota Constitution and Minnesota state law, and depriving it of the right to a jury trial as guaranteed by the Minnesota Constitution. (Compl. ¶¶ 10–19.)

### A. Factual Background

On October 10, 2018, the City received a complaint that Sabri had blocked a sidewalk or lane with construction materials and equipment at 2900 Pleasant Avenue South without a valid permit. (Compl. Ex. A [Doc. No. 1-1].) On October 12, 2018, citing this as Sabri's fifth violation of Minneapolis Code of Ordinances ("MCO") § 430.30(2)[1] within a 24-month period, the City issued an administrative citation to Sabri in the amount of $3,200. (Compl. Ex. A.)

The Minneapolis City Council enacted an administrative enforcement and hearing process for the resolution of violations of the MCO in order to "facilitate compliance with certain provisions of [the MCO] and avoid unnecessary delay in the enforcement of the Minneapolis Code of Ordinances." MCO § 2.10. Sabri was required to either pay the fine or request a hearing within 25 days of service of the administrative citation. MCO § 2.80. Hearings are conducted before a hearing officer selected and appointed by the Minneapolis City Attorney. MCO § 2.100(b). Sabri alleges that hearing officers are compensated directly from the City Attorney's budget. (Compl. ¶ 8.) According to an exhibit Sabri attached to his Complaint, the City of Minneapolis entered into an

---

[1] MCO § 430.30(2) states, in pertinent part: "An obstruction permit is required to hinder free and open passage over the specified portion of right-of-way by placing equipment described therein on the right-of-way for the duration specified therein."

agreement with a law firm on March 8, 2010, for the provision of administrative hearing officer services for a three-year term during which compensation would not exceed $175,000.  (Compl. ¶ 8, Ex. C).  Hearing officers have authority to, *inter alia*, mediate a settlement between the alleged MCO violator and the City, dismiss the administrative citation, and determine if a violation has occurred.  MCO § 2.100(g).  The burden of proof rests on the City to demonstrate by "a preponderance of the evidence that a violation occurred and that the required corrective action, if applicable, is reasonable."  MCO § 2.100(f).

### B.      Sabri's Claims

Sabri organizes its allegations into three counts.  In Count I, Sabri alleges that the City violated its Fourteenth Amendment right to due process under the United States Constitution because the City appoints and pays the hearing officers before whom violations are heard.  (Compl. ¶¶ 7–8, 11.)  In Count II, Sabri alleges that the City violated its right to due process under the United States and Minnesota Constitutions and state statutory law because (1) a civil fine of $3,200 exceeds the maximum fine of $300 for a petty misdemeanor, as set by Minn. Stat. § 609.02, subd. 4a; and (2) the standard of proof at administrative hearings is "by a preponderance of the evidence" rather than "proof beyond a reasonable doubt," in contravention of Minn. Stat. § 484.87, subd. 4; Minn. Stat. § 611.02; and Minnesota Rule of Criminal Procedure 23.05, subd. 3.  (Compl. ¶¶ 9, 15, 17.)  Finally in Count III, Sabri alleges that the City's imposition of a monetary civil fine violates its right to a trial by jury under the Minnesota Constitution.  (Compl. ¶¶ 18–19.)  As relief, Sabri seeks a declaratory judgment that MCO §§ 2.80 and 2.100 are

facially unconstitutional and as applied under both the United States and Minnesota Constitutions, and that those sections violate various Minnesota statutes and the Minnesota Rules of Criminal Procedure; an injunction; and an award of costs, disbursements, and attorney's fees.

### C.     The City's Motion to Dismiss

On December 17, 2018, the City moved to dismiss Sabri's Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  The City argues that the administrative hearing system does not violate due process under either the United States or Minnesota Constitution, contests the criminal nature of the civil fine and imposition of a criminal evidentiary standard, and submits that the Minnesota Constitution does not extend the right to jury trial to administrative citations.  (Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 18].)  Sabri filed a memorandum in opposition [Doc. No. 23] on January 4, 2019, and the City filed a reply memorandum [Doc. No. 25] on January 22, 2019.  The Court held a motion hearing on February 4, 2019, and took the motion under advisement.[2]

---

[2] On February 26, 2019, while the motion was under advisement, Sabri filed a letter bringing to the Court's attention the Supreme Court's recent decision in *Timbs v. Indiana*, No. 17-1091, ---S. Ct.----, 2019 WL 691578 (Feb. 20, 2019), acknowledging that Sabri had not expressly alleged an Excessive Fines Clause claim, and requesting leave to amend its Complaint.  (Speeter Letter [Doc. No. 27].)  The Court responded to Sabri by letter, agreeing that Sabri's existing allegations did not state a putative Excessive Fines Clause claim and instructing Sabri to follow the Federal Rules of Civil Procedure and the Local Rules of the District of Minnesota should it seek to amend its Complaint. (Ct. Letter [Doc. No. 28].)

## II.     Legal Standard

On a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, a court may not consider matters outside the pleadings in assessing the sufficiency of a complaint under the Rule 12(b)(6) standard. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). A court may make exceptions to this rule for matters of public record, materials "necessarily embraced by" the complaint, and exhibits submitted with the complaint. *Id.* (citations omitted).

## III.    Discussion

### A.     Count I:  City's Appointment and Compensation of Hearing Officers

Sabri alleges in the Complaint that, because it has no choice but to pay the administrative fine or contest the fine before a hearing officer selected and compensated by the City, it is deprived of due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution. (Compl. ¶ 11.) The City moved to dismiss this claim, asserting that it has taken substantial steps to provide due process in

5

the administrative enforcement and hearing process, including the right of an alleged violator to strike one hearing officer without cause and subsequent officers for cause, the right to request subpoenas and to present testimony from witnesses, and the right to a recorded hearing, written decision, and judicial review by the Minnesota Court of Appeals. (Def.'s Mem. Supp. Mot. Dismiss at 7–8 (citing Compl. Ex. B (MCO § 2.100(b))).) The City cites two Minnesota Court of Appeals' decisions that rejected Sabri's contention and held that the City's process of selection and compensation of administrative hearing officers does not offend due process. (Def.'s Mem. Supp. Mot. Dismiss at 8 (citing *In re Khan*, 804 N.W.2d 132 (Minn. Ct. App. 2011); *Buchanan v. City of Minneapolis*, No. A10-1695, 2011 WL 2982621 (Minn. Ct. App. July 25, 2011), *review denied* Sept. 20, 2011).)

Sabri counters that the hearing officer system deprives it of a "neutral and unbiased adjudicator, a factor recognized as an essential element of due process by both state and federal courts." (Pl.'s Mem. Opp'n Mot. Dismiss at 2 [Doc. No. 23].) As support for this position, Sabri relies on *Tumey v. Ohio*, 273 U.S. 510 (1927), where the Court reversed a criminal conviction because the village mayor, acting as judge, had a pecuniary interest in the result of the trial. Sabri quotes the following language:

> [I]t certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case.
>
> . . .
>
> Every procedure which would offer a possible temptation to the average

6

> man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law.

*Id.* at 523, 532. Sabri concedes that *Tumey* was a criminal case, but points to *Aetna Life Insurance Co. v. LaVoie*, 475 U.S. 813 (1986), in which the Court applied the principles of *Tumey* to a civil action in which an Alabama Supreme Court justice was shown to have an interest in the outcome of a case; specifically, the justice cast the deciding vote and authored the court's opinion in a bad-faith insurance case while the justice had a similar, personal lawsuit pending against an insurance company. *LaVoie*, 475 U.S. at 817. Soon after the opinion was issued, the defendant-insurer paid the justice "a tidy sum" to settle his case. *Id.* at 824. The Court held that the justice's interest in the state supreme court case was "direct, personal, substantial, and pecuniary," *id.* (citations and internal alteration omitted), and that his participation in the case violated due process, *id.* at 825.

Sabri does not allege that a hearing officer presiding over its administrative hearing had a direct, personal, substantial, and pecuniary interest in its case. Indeed, Sabri did not avail itself of the administrative hearing process. Rather, Sabri alleges that the very fact that the City compensates the hearing officers violates due process. Sabri has not cited any authority that directly supports this proposition, however, and even *Tumey* and *LaVoie* cannot be stretched that far. Under *LaVoie*, to plead a viable due process violation, Sabri would have to allege facts that would support a reasonable inference that the City's administrative enforcement and hearing process creates a situation in which the hearing officers have a "direct, personal, substantial, and pecuniary" interest in the outcome of the proceeding. Sabri has not done so.

7

Consequently, Sabri has failed to state a plausible due process claim.

The Court's conclusion is consistent with the two Minnesota Court of Appeals cases holding that the City's administrative hearing system did not violate due process. In *Buchanan*, the plaintiff argued the City's administrative hearing process violated the Due Process Clause because the "hearing officers have a financial interest in the outcome of the adjudication." 2011 WL 2982621, at *7. As alleged here, the hearing officer received $175,000 for his services for three years. *Id.* The court described the compensation as "substantial," but found it significant that the hearing officer heard numerous cases during the three-year period and that "the city was contractually obligated to pay him for those three years regardless of whether he rendered decisions favorable to the city." 2011 WL 2982621, at *8. In addition, "substantial evidence support[ed] the hearing officer's decision, so it cannot be said to have been arbitrary and capricious and the result of a personal, pecuniary interest." *Id.* Finally, there was no evidence that the City refused to re-hire hearing officers who ruled against it or that the hearing officers acted in their personal interests. *Id.* Consequently, the City's hearing process did not violate due process. *Id.*

Here, Sabri has not alleged facts that would distinguish this case from *Buchanan*. Sabri does not allege, for example, that MCO §§ 2.80 or 2.100 give hearing officers a financial interest in the outcome of the administrative proceedings, that the City may withhold payment to the hearing officer unless a decision is made in its favor, that Sabri did not obstruct the sidewalk or lane without a permit, that Sabri did not commit five violations in a 24-month period, that the City refuses to re-hire hearing officers who rule

8

against it, or that hearing officers have acted in their personal interests.

The *Buchanan* court also distinguished a California state court case on which Sabri relies, *Haas v. County of San Bernardino*, 45 P.3d 280 (Cal. 2002). *Haas* considered a compensation system in which hearing officers were selected on an *ad hoc* basis, paid according to the time spent and amount of work performed, and selected for future work based entirely on the government's goodwill. 45 P.3d at 283. The court determined that a process by which hearing officers were potentially rewarded for favorable decisions with future work violated due process. *Id.* at 285. But the contested features present in the California compensation system do not exist in MCO §§ 2.80 and 2.100. Consequently, *Haas* is not applicable here.

Shortly after its decision in *Buchanan*, the Minnesota Court of Appeals again reviewed the City's hearing officer system in *Khan*. There, the plaintiff argued that because the hearing officers were hired and selected by the City, they had "a direct, personal, substantial pecuniary interest in rendering outcomes favorable to the [C]ity and securing future employment." *Khan*, 804 N.W.2d at 137. Addressing the federal and state due process claims together, the court considered the same compensation system as issue here and determined that it did not violate due process. *Id.* at 137–39. The court emphasized that the City had delineated numerous qualifications for hiring a hearing officer, that the alleged violator is allowed one automatic removal of an assigned hearing officer, and that hearing officers serve for three years at a time rather than on an *ad hoc* basis. *Khan*, 804 N.W.2d at 138–39. In accordance with *Khan*, the Court concludes that MCO §§ 2.80 and 2.100 do not violate the Due Process Clause.

Other persuasive authorities also support the conclusion that the mere fact that the City compensates the hearing officers who will adjudicate Sabri's citation does not, alone, violate due process. In *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Board*, the California Court of Appeals recognized that while no showing of actual bias is necessary to prove a due process violation, "it has been consistently recognized that the fact that the agency or entity holding the hearing also pays the adjudicator does not automatically require disqualification. . . . [S]uch a rule would make it difficult or impossible for the government to provide hearings which it is constitutionally required to hold." 121 Cal. Rptr. 2d 729, 734 (Cal. Ct. App. 2002) (distinguishing *Haas*). Finally, the National Association of Hearing Officials has adopted the following ethical rule: "Hearing officials should always withdraw from any proceeding in which their impartiality becomes compromised for any reason. However, the hearing official should not withdraw from a proceeding if the hearing officials' impartiality is challenged solely on the basis that the hearing officials are employed by an agency appearing in the proceeding." National Association of Hearing Officials Model Code of Ethics § III, *available at* https://naho.org/Model-Code-of-Ethics.

Sabri contends that it would be premature to dismiss its due process claim because it intends to obtain evidence of actual bias through discovery. However, to survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, and Sabri has not stated a plausible due process claim. It is well-established that "[a] plaintiff must adequately plead a claim before obtaining discovery, not the other way around." *In re Medtronic,*

10

*Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, No. 08-1905 (RHK/JSM), 2009 WL 294353, at *2 (D. Minn. Feb. 5, 2009), *aff'd*, 623 F.3d 1200 (8th Cir. 2010). Moreover, the City has represented that the relevant information is already available to Sabri via the Minnesota Government Data Practices Act, and Sabri has not refuted that representation. Of final note, Sabri has not described the particular evidence he hopes to obtain or how he could establish that a hearing officer was biased when he did not have a hearing on the citation underlying his claim.

In conclusion, Sabri has not alleged sufficient facts to support a reasonable inference that the City's compensation of hearing officers violates federal due process. There are no allegations that hearing officers have a direct, personal, and substantial pecuniary interest in rendering a favorable decision to the City, and it is well established that compensation alone does not establish a due process violation. Moreover, the Minnesota Court of Appeals has already determined that the City's hearing officer system does not offend due process, and Sabri's authority is either distinguishable or inapplicable. Accordingly, the Court recommends that Count I be dismissed for failure to state a claim on which relief may be granted. The Court further recommends that the claim be dismissed with prejudice because it is not likely that Sabri could allege additional facts that would save the claim. *See Jackson v. Walgreens Co.*, No. 16-0398 (JRT/FLN), 2016 WL 4212258, at *2 (D. Minn. Aug. 10, 2016).

    **B.**    **Count II: Due Process and State Law Violations by Imposition of $3,200 Civil Fine and by Use of a Lower Burden of Proof than "Beyond a Reasonable Doubt"**

In Count II, Sabri alleges due process violations under the United States and

Minnesota Constitutions, as well as several state statutory violations. Essentially, he contends that the citation and fine are criminal in nature, not civil, which would entitle him to a presumption of innocence and proof beyond a reasonable doubt, and which would limit the maximum fine to $300. (Compl. ¶¶ 14–17.)

Broadly speaking, due process under the Fourteenth Amendment "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The amount of process due varies depending on the situation, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), including whether a proceeding or sanction is civil or criminal in nature, *e.g.*, *Addington v. Texas*, 441 U.S. 418, 423–24 (1979) (describing the standards of proof embodied in the Due Process Clause as ranging from "a mere preponderance of the evidence" in a "typical civil case" to "guilt . . . beyond a reasonable doubt" in a criminal case). Given that "[t]he due process protection provided under the Minnesota Constitution is 'identical' to the protection provided by the U.S. Constitution," *Minneapolis Taxi Owners Coalition, Inc. v. City of Minneapolis*, 572 F.3d 502, 510 (8th Cir. 2009) (quotation omitted), the Court will consider the state and federal due process claims together.

### 1.     $3,200 Fine

Sabri alleges that the imposition of a $3,200 fine violates both due process and Minn. Stat. § 484.87, subd. 4. (Compl. ¶¶ 14–17.) Section 484.87, subd. 4, provides that the maximum fine for a petty misdemeanor offense may not exceed $300. Sabri claims that the City is circumventing the $300 maximum fine by labeling the fine as "civil," which violates both § 484.87, subd. 4, and due process.

12

To illustrate its point, Sabri argues that if an individual ran a stop sign in violation of the City's traffic code, the individual would be entitled to a presumption of innocence and proof beyond a reasonable doubt for a conviction. The City could issue an administrative citation for the same conduct, however, subject the violator to a lower standard of proof, and impose an increased fine. The City counters that MCO § 2.60 expressly forbids the imposition of a civil fine "for ordinance violations that prohibit the same conduct that is classified as a crime or petty misdemeanor in Minnesota Statutes, Chapters 168, 169, 170, 171 and 609." (Def.'s Reply Mem. at 5 [Doc. No. 25].)

Whether a statutory penalty is civil or criminal in nature is a question of statutory construction. *United States v. Ward*, 448 U.S. 242, 248 (1980). When a legislature has indicated that a penalty is civil in nature, courts inquire "whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." *Id.* at 248–49. The Supreme Court has required the "clearest proof" of a criminal penalty before a civil statute may be deemed unconstitutional. *Id.* at 249. The Supreme Court has outlined seven factors to determine whether a provision is sufficiently punitive in order to override express intent, including:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963) (internal footnotes omitted).

13

A court need consider only the factors pertinent to the case at hand. *See Ward*, 448 U.S. 249–50.

First, the City's imposition of a monetary fine has not imposed any disability or restraint, as that phrase has been interpreted by the Supreme Court. *Smith v. Doe*, 538 U.S. 84, 100 (2003) (describing "the punishment of imprisonment" as "the paradigmatic affirmative disability or restraint"). Indeed, it is common for a municipal corporation to enforce its ordinances through imposition of a civil fine. 5 *McQuillin Municipal Corporations* § 17:3 (3d ed.). Second, monetary penalties have not historically been considered punishment. *Cole v. U.S. Dep't of Agric., A.S.C.S.*, 133 F.3d 803, 806 (11th Cir. 1998) (quoting *Hudson v. United States*, 522 U.S. 93, 104 (1997)). Third, the violation at issue does not require a finding of scienter; it is applicable whether or not the violator meant to obstruct a right-of-way without a permit. Fourth, while the imposition of a large fine may well act as a deterrent to future violations, deterrence "may serve civil as well as criminal goals." *United States v. Ursery*, 518 U.S. 267, 292 (1996). Considering that the fine was imposed for Sabri's fifth alleged violation of MCO § 430.30 in 24 months, the fine retained its civil deterrent effect. Finally, MCO § 2.60 expressly provides that civil fines may be imposed for the administrative offenses listed in § 2.40 and acknowledges that civil fines may not be levied for violations that prohibit the same conduct that is classified as a crime. Sabri was cited for not having an appropriate permit to obstruct a right-of-way, which is not a crime.[3]

---

[3] At the motion hearing, Sabri argued for the first time that the conduct underlying the administrative citation is also prohibited by Minn. Stat. § 169.34, which states "[n]o

For the above reasons, the Court concludes that the $3,200 fine was a civil, not criminal, penalty. Consequently, Sabri's claim that the imposition of the $3,200 fine violates due process and Minn. Stat. § 484.87, subd. 4, should be dismissed. The Court recommends dismissal with prejudice because it is unlikely that Sabri could allege additional facts that would revive the claim.

### 2. Standard of Proof

Similarly, Sabri argues that because the City's administrative enforcement system holds the City to a lower standard of proof than in a criminal proceeding, it violates due process and state law. This aspect of Sabri's claim also fails for the reasons articulated above. The citation was civil, not criminal, in nature. Therefore, the City did not need to prove Sabri's culpability beyond a reasonable doubt.[4] The Court recommends that this aspect of the claim be dismissed with prejudice.

### C.   Count III:  Deprivation of Right to Jury Trial

---

person shall stop, stand, or park a vehicle . . . on a sidewalk." Sabri argued that Minn. Stat. § 412.861 requires the criminal prosecution of a violation of § 169.34 and precludes the City from using its hearing officer system in such cases. The Court declines to entertain arguments made for the first time during an oral argument. *See Halsne v. Avera Health*, No. 12-cv-2409 (SRN/JJG), 2013 WL 3088588, at *3, 5 (D. Minn. June 18, 2013). Moreover, even if the Court were to entertain the argument, the citation at issue referred to "construction materials and equipment" blocking the sidewalk, not a vehicle. (Compl. Ex. A.)

[4] Sabri argued at the motion hearing that it should be afforded other criminal protections such as the exclusionary rule and application of the Minnesota Rules of Criminal Procedure. Because those contentions were not made in Sabri's Complaint, they are not specifically discussed here. Moreover, a motion to amend the Complaint to add these allegations would likely fail on futility grounds for the same reasons as the allegations pertaining to the criminal nature of the fine and the applicable burden of proof.

Based on the Court's conclusion that Sabri's federal claims should be dismissed with prejudice, the Court recommends that the District Court decline to exercise supplemental jurisdiction over Sabri's claim that he is entitled to a jury trial. This claim is brought solely under the Minnesota Constitution. The only basis for federal jurisdiction over this claim is 28 U.S.C. § 1367(a), which provides for "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." A court should decline to exercise supplemental jurisdiction over a state law claim when all claims over which the court has original jurisdiction are dismissed. *See Clark v. Roy*, No. 13-cv-2849 (MJD/HB), 2015 WL 1179380, at *3 (D. Minn. Mar. 13, 2015); *see also* 28 U.S.C. § 1367(c)(3). The Court recommends that the District Court decline to exercise supplemental jurisdiction over this claim.

If the District Court instead wishes to address this claim on the merits, the Court would recommend that Count III be dismissed with prejudice. Sabri alleges that it is entitled to a trial by jury under Article 1, Section 4, of the Minnesota Constitution and thus seeks a declaratory judgment that MCO §§ 2.80 and 2.100 are unconstitutional. (Compl. ¶¶ 18–19.) The City counters that the right to trial by jury does not apply to administrative proceedings. (Def.'s Mem. Supp. Mot. Dismiss at 11.) The City cites three cases in which Minnesota courts have declined to extend the right of a jury trial to an administrative proceeding. First, *in Riley v. Jankowiski*, 713 N.W.2d 379 (Minn. Ct. App. 2006), the court declined to extend a jury trial to an administrative proceeding concerning false campaign materials because (1) the process did not exist when the

16

Minnesota Constitution was adopted, and (2) the process was not a criminal prosecution. Next, in *Breimhorst v. Beckman*, 35 N.W.2d 719, 734 (Minn. 1949), the Minnesota Supreme Court stated that where the Minnesota Constitution notes "[t]he right of trial by jury shall remain inviolate, and shall extend to All cases at law," the term "all cases at law" refers to common-law actions rather than causes in equity, and administrative citations are causes in equity. Finally, in *Mees v. Commissioner of Public Safety*, No. A05-2190, 2006 WL 2676044 at *5 (Minn. Ct. App. Sept. 19, 2006), the court of appeals held the Minnesota Constitution does not provide the right to a jury trial for reinstatement of a driver's license.

Sabri argues, *inter alia,* that these cases can be distinguished because they dealt with causes of action in equity, whereas the MCO seeks the recovery of money. Thus, it contends, it is entitled to a jury trial related to its civil fine. (Pl.'s Mem. Opp'n at 12–16.)

The Court disagrees. Even though the civil fine imposed is monetary, it is essentially equitable in nature and thus properly excluded from the Minnesota Constitution's right to a jury trial. The purpose of the imposition of a fine is to ensure prompt compliance with the MCO, not to recover damages. *See* MCO § 2.10 ("The council finds that an administrative enforcement and hearing process will *facilitate compliance* with certain provisions of this Code and avoid unnecessary delay in the enforcement of the Minneapolis Code of Ordinances") (emphasis added). The Minnesota Supreme Court has held "that in an action for specific performance of an agreement, in which the plaintiff sought monetary damages as part of the equitable relief, rather than as an award of damages for breach of contract, there was no constitutional right to jury

17

trial." *Abraham v. Co. of Hennepin*, 639 N.W.2d 342, 353 (Minn. 2002) (citation omitted). Thus, the fact that relief is sought in monetary form is not determinative. Because the City is seeking equitable relief to ensure prompt compliance with the MCO, not compensation for damages resulting from the violation, Sabri is not entitled to a jury trial. Therefore, Sabri has failed to state a claim for which relief may be granted, and Count III should be dismissed with prejudice if the District Court decides to reach the merits of this claim.[5]

## IV. Recommendation

Based on the foregoing and all of the files, records, proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss [Doc. No. 16] be **GRANTED**, as follows:

1. Count I of Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**;

2. Count II of Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**; and

3. Count III of Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION** or in the alternative be **DISMISSED WITH PREJUDICE.**

Dated: March 6, 2019             s/ *Hildy Bowbeer*
                                 HILDY BOWBEER
                                 United States Magistrate Judge

---

[5] Because the Court concludes Sabri has not established that the fine imposed by the City is a claim for damages that triggers the right to a jury trial under the Minnesota Constitution, it need not address Sabri's invitation to explore whether a municipality's ability to impose a civil fine for violation of a municipal ordinance was known at the time the state constitution was adopted. (*See* Pl.'s Mem. Opp'n at 14.)

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).